CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 14 2024

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DANIEL P. MOOK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-00028 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CITY OF MARTINSVILLE, VIRGINIA, | ) | By:  Hon. Thomas T. Cullen |
| and G. ANDREW HALL, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Daniel Mook's mother suffers from several severe illnesses and requires assistance to perform many daily activities. When Mook, a former assistant Commonwealth's Attorney in Martinsville, Virginia, requested time off from work to care for his ailing mother, his employer had suspicions about the medical certification he submitted. After speaking with his mother's healthcare provider, Mook was accused of forging the necessary paperwork and fired. Mook believes his employer wrongfully investigated the allegedly fraudulent certification form (which he maintains was not fraudulent at all), and in so doing, violated his rights under the Family Medical Leave Act.

Mook sued the City of Martinsville, Virginia, and G. Andrew Hall, the Commonwealth's Attorney for the City of Martinsville. Both defendants have moved to dismiss Mook's amended complaint. Because Mook's allegations are sufficient at this stage to state a claim against both parties, the motions to dismiss will be denied.

## I. FACTUAL ALLEGATIONS AND BACKGROUND

The following facts are taken from Mook's amended complaint and, at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Mook was hired as an Assistant Commonwealth's Attorney in Defendant City of Martinsville("Martinsville"), on or about April 3, 2018. (Am. Compl. ¶ 8 [ECF No. 7].) In that role, he worked under Defendant G. Andrew Hall's ("Hall") direct supervision. (*Id.*) His salary was paid via check, issued by Martinsville, and Martinsville's human resources department ("HR") "managed his employment benefits." (*Id.* ¶ 3.)

Mook's mother, Shirley, "suffers from severe osteoarthritis and osteoperosis [*sic*], which are degenerative joint and bone diseases, respectively." (*Id.* ¶ 9.) Due to her conditions, she "requires assistance with dressing, meal preparation, and transportation." (*Id.*) In November 2021, Mook requested leave under the Family Medical Leave Act ("FMLA") to care for Shirley. (*Id.* ¶ 11.) An individual in the Martinsville HR department provided Mook "with a blank Certification of Health Care Provider for Family Member's Serious Health Condition" under the FMLA ("the Certification"), "to be signed by his mother's medical provider." (*Id.*; *see also id.* Ex. A.) The form contained sections to be completed by Mook's employer, Mook, and his mother's "health care provider." (*Id.* Ex. A.)

Mook completed most of the form, including the section that was to be completed his mother's physician, "based on his knowledge of her condition as her caregiver." (*Id.* ¶ 12.) When Mook accompanied his mother to an appointment with her physician, Dr. Lisa Francis, he gave the form to his mother's nurse, Scott R. Schmidt, R.N. (*Id.* ¶ 13.) Nurse Schmidt "left the room with the form—presumably to discuss the certification with Dr. Francis—then

returned to the room and signed it." (*Id.*) Nurse Schmidt signed the form with his name, followed by the phrase "per Dr. Lisa Francis." (*Id.*) Mook thereafter submitted the completed form to both the office manager for the Commonwealth's Attorney and to the HR Director for Martinsville. (*Id.* ¶ 14.)

Upon review of the form, Martinsville HR "raised questions about the authenticity of the Certification," but at that time, no one shared those concerns with Mook. (*Id.* ¶ 15.) In a letter to Mook several days later, Hall explained that HR called the doctor's office "to confirm that the form [Mook] provided was indeed filled out by someone in the office." (*Id.*) Hall said that "we" (presumably he and Martinsville HR) faxed the doctor's office "a copy of the form [Mook] had submitted," but "[t]hey informed us that no one in the office—including the doctor and RN—filled out the form." (*Id.*) The office apparently informed Hall that "[t]he doctor did not authorize anyone to fill it out or sign it on her behalf," and "[t]he RN who signed it stated that [Mook] approached him and asked him to sign an excuse for missing work." (*Id.*) Hall also told Mook that Martinsville HR "directed him to fire Mook due to questions regarding the authenticity of the Certification. Hall further stated that 'HR wouldn't like it,' but he offered Mook the option of resigning immediately in lieu of dismissal." (*Id.* ¶ 16.) Mook refused to resign and, on November 18, 2021, Hall sent Mook an email terminating him. (*Id.* ¶ 17.)

Mook filed suit in this court on November 16, 2023, alleging that Martinsville interfered with his rights under the FMLA. (*See* Compl. ¶¶ 23–24 [ECF No. 1].) Martinsville responded with a motion to dismiss (ECF No. 4), and Mook filed an amended complaint as of right, *see* Fed. R. Civ. P. 15(a)(1)(B), reasserting the same cause of action against Martinsville and adding

Hall as a defendant. (*See* Am. Compl. ¶¶ 4–5, 26–27.) Both Martinsville and Hall filed motions to dismiss under Fed. R. Civ. P. 12(b)(6). (ECF Nos. 8, 19.) Both claim that the other was Mook's employer, and both contend that his allegations do not state a claim for FMLA interference. The court has fully reviewed the pleadings, briefs, and applicable law, making this matter ripe for disposition.[1]

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. ANALYSIS

"The FMLA makes it unlawful for any employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Snipes v. Sw. Va. Reg'l Jail Auth.*, 350 F. Supp. 3d 489, 492 (W.D. Va. 2018) (quoting 29 U.S.C. § 2615(a)(1))

---

[1] The court dispenses with oral argument as the discrete issues are well articulated by the parties in their respective filings.

(alteration in original). "To state a claim for FMLA interference, [a plaintiff] must show that (1) they were an eligible employee, (2) the defendant was an FMLA-defined employer, (3) they are entitled to leave under the statute, (4) they gave notice to the employer that they would take FMLA leave, and (5) the defendant denied their FMLA rights." *Id.* at 492–93 (citing *Corbett v. Richmond Metro. Transp. Auth.*, 203 F. Supp. 3d 699, 709 (E.D. Va. 2016). "Interference includes refusing to authorize FMLA leave and discouraging an employee from taking FMLA leave." *Id.* at 493 (citing *Rodriguez v. Reston Hosp. Ctr., LLC*, No. 1:16-cv-623 (JCC/JFA), 2017 WL 772348, at *4 (E.D. Va. Feb. 28, 2017)). "An employer's conduct may constitute interference with an employee's FMLA rights if it would have a chilling effect and would discourage employees from exercising their FMLA rights." *Id.*

Both Hall and Martinsville attack Mook's allegations on similar fronts. First, each claims that the other was Mook's actual employer. Second, because Mook premises his claim on an alleged violation of applicable FLMA regulations, they both contend that their actions were permitted under those regulations. The court does not find either argument persuasive at this early stage.

### A. Mook's Employer

Both Hall and Martinsville claim they were not Mook's employer. But for purposes of 12(b)(6), Mook has adequately alleged that both were (or that one or the other was) his employer.[2] Under the FMLA, the term "employer" includes "any 'public agency,'" which

---

[2] As one court explained it:

> In the context of "joint employment," an employee can pursue a labor relations claim against multiple entities if they each "exercise sufficient control over the same employees." *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015) (quoting *Bristol v. Bd. of Cnty.*

embraces "the government of a State or political subdivision thereof; any agency of . . . a State; or [any agency of] a political subdivision of a State." 29 U.S.C. §§ 2611(4)(A)(iii) (employer), 203(x) (public agency). An FMLA employer also includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." *Id.* § 2611(4)(A)(ii)(I).

As to Hall's status as Mook's employer, Mook alleges the following: in his role as the Commonwealth's Attorney, Hall was a "public agency" and thus an "employer" under 29 U.S.C. § 2611(4)[3] (Am. Compl. ¶ 6); as an Assistant Commonwealth's Attorney, Mook was under Hall's direct supervision (*id.* ¶ 8); Mook presented the completed certification to the Commonwealth's Attorney's office manager (*id.* ¶ 14); Hall informed Mook of concerns

---

*Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002) (*en banc*)) (internal quotation omitted). The Fourth Circuit has recognized at least three tests—the economic realities test, the control test, and the hybrid test—for determining "whether an entity exercises control over an employee" such that it should be considered a joint employer. *Id.* at 410. In *Butler*, the Court found three factors to be most significant: "(1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work." *Id.* at 414 (cautioning that "control remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers.").

By contrast, the "integrated employer" doctrine imputes liability to companies for employment violations where the companies are "so interrelated that they constitute a single employer." *Hukill [v. Auto Care, Inc.*], 192 F.3d [437,] 442 [(4th Cir. 1999)]. The Fourth Circuit has articulated a non-exhaustive, four-factor test to determine whether separate entities should be treated as a single employer for purposes of the FMLA: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Id.* (citing 29 C.F.R. § 825.104(c)(2)). Similar to the joint[-]employer analysis, "no single factor is conclusive"; however, "control of labor operations is the most critical factor." *Id.* (citing *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 764 (5th Cir. 1997)).

*Newhouse v. Sugar Creek Pizza, LLC*, No. 2:19-CV-00015, 2019 WL 1867957, at *3–4 (S.D.W. Va. Apr. 24, 2019).

[3] The court recognizes that, while Mook's factual allegations are presumed to be true at this stage, no such presumption applies to his legal conclusions. *See Iqbal*, 556 U.S. at 678.

related to the completed certification via letter (*id.* ¶ 15); Martinsville, through its HR department, directed Hall to fire Mook, but Hall unilaterally gave him the option to resign even though "HR wouldn't like it" (*id.* ¶ 16); and when Mook refused to resign, Hall fired him (*id.* ¶ 17).

As to Martinsville's status, Mook alleges the following: that Martinsville was a "public agency" and thus an "employer" under 29 U.S.C. § 2611(4) (*id.* ¶ 6); that Mook's salary "was paid via check from Martinsville," and the Martinsville HR department "managed his employment benefits" (*id.* ¶ 3); that Martinsville provided Mook with the blank FMLA certification form (*id.* ¶ 11); that Mook submitted the completed certification to Martinsville (*id.* ¶ 14); that Martinsville "raised questions about the authenticity of the Certification" (*id.* ¶ 15); and that Martinsville directed Hall to fire Mook (*id.* ¶ 16).

These allegations, taken as true, establish a viable claim that either Hall or Martinsville (or both) were Mook's employer. Both had important roles related to his employment—one supervised his day-to-day job responsibilities,[4] the other paid his salary and oversaw his federally protected rights, and both apparently had authority to make decisions regarding his continued employment.[5] Under these facts, both may be liable as Mook's employer for any

---

[4] Insofar as Martinsville is a "government of a State or political subdivision thereof" and Hall acted on its behalf—in informing Mook of the allegations against him, informing him of his option to avoid termination, and actually firing him—both may be considered Mook's employer. *See* 29 U.S.C. §§ 2611(4)(A), 203(x). And if only one of them was actually Mook's employer, his complaint is still sufficient as the factual allegations would establish that either of them employed Mook. *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

[5] The parties rely on numerous purported facts not found in the Amended Complaint to support of their position. While the court takes note of the statutory structure that outlines and defines the roles of Assistant Commonwealth's Attorneys, the court is bound by the facts Mook has alleged.

alleged FMLA violation.[6]

## B. Interference Under the FMLA

Mook alleges that, by calling his mother's physician and inquiring about the form, Martinsville and Hall violated applicable FMLA regulations and interfered with his rights under that statute. *See, e.g.*, *Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853, 871–74 (S.D. Tex. 2019) (noting that violation of the FMLA's instruction to allow an employee to cure the certification form deficiencies before going straight to the medical provider may constitute interference if the plaintiff can show prejudice). Under 29 C.F.R. § 825.305(c), an employee

> must provide a complete and sufficient certification to the employer if required by the employer in accordance with §§ 825.306, 825.309, and 825.310. The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient. A certification is considered incomplete if the employer receives a certification, but one or more of the applicable entries have not been completed. A certification is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive. The employer must provide the employee with seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure any such deficiency. If the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave, in accordance with § 825.313. A certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification.

---

[6] The court further notes that, if neither Hall nor Martinsville can discern who Mook's actual employer was, this court is not in any better position than they are. Likewise, their failure to ascertain Mook's actual employer raises a serious material factual dispute that precludes dismissal at this early stage.

Critically, "If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider." *Id.* § 825.307(a). But an "employer may contact the health care provider for purposes of clarification and authentication of the medical certification . . . *after* the employer has given the employee an opportunity to cure any deficiencies as set forth in § 825.305(c)." *Id.* (emphasis added).

Mook contends that, if there was an issue with his certification, his employer was required to notify him before contacting the relevant health care provider. Hall and Martinsville, however, argue they were investigating whether the certification was fraudulently completed, and therefore their actions were permitted under the regulation as they were attempting to "authenticate" the certification. *See id.*

A plain reading of the regulations suggests that Mook has the better argument. Under the regulations, "authentication means providing the health care provider with a copy of the certification and requesting verification that the information contained on the certification form was completed and/or authorized by the health care provider who signed the document." But before the employer may do so, it must give its employee a chance to cure any purported deficiencies in the certification. *Id.* Here, Mook alleges that his employer contacted Dr. Francis to determine if she completed the certification; that is "authentication" under the statute, so his employer was obligated to contact Mook first to give him the opportunity to "cure any deficiencies" in that certification.[7]

---

[7] For example, Hall and Martinsville argue that the healthcare provider must complete Section III of the Certification (Mook could not write it in) and that a nurse was not permitted to sign the certification. These alleged errors would have been easy to cure, had they given Mook the opportunity.

Hall and Martinsville try to avoid the plain language of the statute by claiming that they were investigating fraud. But regardless of what label they assign, there is no doubt that they were "requesting verification that the information contained on the certification form was . . . authorized by the health care provider who signed the document." *Id.* They suspected that Mook himself had filled out the section, as they claim the handwriting was clearly the same as the section he was directed to fill out. But whether Mook, Nurse Schmidt, or Dr. Francis filled it out, what matters is that Hall and Martinsville questioned whether the health care provider had authorized the representations therein. In seeking to verify that, Hall and Martinsville were required by the regulations to go to Mook first. As alleged in the complaint, they did not.

Martinsville and Hall also argue that, because the regulation says that an employee must be given the "opportunity to cure any deficiencies as set forth in § 825.305(c)," and because the only deficiencies outlined in § 825.305(c) are incompleteness or insufficiency, they were under no obligation to give Mook the opportunity to address its alleged authenticity. But this clever reading of the regulation would render the cited language superfluous. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("The Government's reading is at odds with one of the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'" (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). If § 825.307(a) only reiterated what is found in § 825.305(c) and offered nothing more, it would be superfluous. Rather, the more logical and consistent interpretation is that § 825.307(a)'s reference to § 825.305(c) goes to the *manner* in which the opportunity to cure must be given—the employer must give the employee seven

days to cure, and if he fails to do so, the employer may deny the request. *See* 29 C.F.R. § 825.305(c). That is the only interpretation of the regulations that gives full effect to all parts.

## IV. CONCLUSION

Whether it be a fraud investigation or a routine verification screen, the FMLA regulations are clear as to what an employer must do. Mook alleges that his employer violated the regulations and terminated him for seeking to take leave afforded to him under the FMLA. On his allegations, he has stated an FMLA interference claim. The motions to dismiss will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 14th day of June, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE