IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DANIEL P. MOOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-28 |
| | ) | |
| CITY OF MARTINSVILLE, VIRGINIA, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

### G. ANDREW HALL'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, G. Andrew Hall ("Hall"), by counsel submits this Reply Memorandum in Support of his Motion for Summary Judgment, stating as follows:

#### STATEMENT OF THE CASE

This is a claim for interference with rights guaranteed by the Family and Medical Leave Act of 1993 ("FMLA") brought by Daniel Mook ("Mook"), a former Assistant Commonwealth's Attorney in the City of Martinsville Commonwealth's Attorney's Office.

In Hall's opening Memorandum in Support of his Motion for Summary Judgment, ECF No. 52-1, Hall argued that he is not an "employer" as that term is defined under the FMLA, and even if he was, there was no interference with Mook's FMLA rights. And even if there was interference, Hall argued that he is entitled to qualified immunity.



629.0500\ALO
4933-0204-0642 .v3

In response, Mook argues in his opposition brief, ECF No. 59, that (1) Hall's Office is a "public agency" and thus an "employer" under the FMLA based on a 1999 U.S. Department of Labor private letter ruling; (2) Hall interfered with Mook's FMLA rights because the problem with the November 12 FMLA Certification was one of "incompleteness" or "insufficiency"; (3) Mook did not engage in fraud because he did not forge anyone's signature; and (4) Hall is not entitled to qualified immunity because the policy underlying the FMLA is meant to protect employee's privacy rights.

However, Mook's arguments fail on several grounds. First, the U.S. Department of Labor private letter ruling has no force of law and should be afforded no deference pursuant to the recent Supreme Court decision in <u>Loper Bright Enterprises, et al. v. Raimondo</u>, 603 U.S. 369, 392 (2024). Second, the November 12 FMLA Certification was both "complete" and "sufficient," and its only issue was one of "authenticity." Next, Mook's fraudulent behavior related to the misrepresentation about who filled out the November 12 FMLA Certification and the fact that Mook's FMLA leave would have expired prior to his mother's surgery—the reason his mother's doctor authorized another FMLA Certification. Lastly, Hall is entitled to qualified immunity because underlying policy does not constitute a "clearly established right," Mook had no privacy interest with regard to his *mother's* health care needs, and the right to the seven-day curing period was not "clearly established" under the particular circumstances of this case.

As a result, the Court should grant summary judgment for Hall and dismiss Mook's claim against Hall with prejudice.



- 2 -

629.0500\ALO
4933-0204-0642 .v3

**RESPONSE & OBJECTIONS TO PLAINTIFF'S DISPUTED FACTS[1]**

10. The "context" Mook provides does not refute the fact that he filled out the November 12 FMLA Certification, including the sections that were expressly reserved for his mother's health care provider. There is no genuine dispute as to this fact. See ECF No. 51-2, Exhibit 2, AHALL-000058 to 000061; Exhibit 6, Plf.'s Resp. to City of Martinsville's 1st Interrogs., *2.

19. RN Schmidt's testimony is clear: he thought he was signing a sick note for Mook. The fact that he testified he wrote an address down does not negate or otherwise refute the fact that RN Schmidt has testified, under oath, that he believed that what he was signing was a one-day excuse for Mook. There is no genuine dispute as to this fact.  See ECF No. 51-2, Exhibit 7, Schmidt Dep. 11:13–22, 12:1–2.

20. RN Schmidt's testimony is clear that Dr. Francis never reviewed the form he signed for Mook, and if RN Schmidt thought he was signing an FMLA form, then he would have presented it to Dr. Francis. ECF No. 52-8 at 7–8; Schmidt Depo., 14:19–22, 15:1–3. Likewise, Dr. Francis's testimony is clear that she never reviewed the November 12 FMLA Certification. ECF No. 52-4 at 5; Francis Depo., 15:12–17. That is the information that Hall possessed at the time of Mook's termination. There is no genuine dispute as to this fact.



---

[1] Numbered paragraphs correspond to the numbered paragraphs in Hall's statement of undisputed material facts in his opening brief, ECF No. 52-1, and Plaintiff's opposition thereto.

- 3 -

629.0500\ALO
4933-0204-0642 .v3

23. See response to No. 20 above. Both Dr. Francis and RN Schmidt testified that Dr. Francis never reviewed the November 12, 2021 FMLA Certification. There is no genuine dispute as to this fact.

38. Mook's denial of using deception to obtain RN Schmidt's signature does not refute the fact that Hall was concerned about Mook's honesty and that concern was the sole motivation for Mook's termination at the time Hall made the decision to terminate. Indeed, the portion of the transcript to which Mook cites supports the inference that Hall's primary concern was whether Mook was dishonest and deceitful in obtaining the FMLA Certification. There is no genuine dispute as to this fact.

39. Mook attempts to reframe this statement of undisputed material fact as though it creates a jury question as to what happened on November 12, 2021. However, the true issue before the Court is <u>not</u> whose account of November 12 is more credible or even what actually happened on November 12. That information is immaterial to this action. Instead, the true issue is whether Hall was justified in doubting Mook's honesty *in light of the conflicting accounts* and whether the existence of that doubt permitted Mook's termination without running afoul of the FMLA and its implementing regulations. And to that end, it is undisputed that there are conflicting accounts of what occurred on November 12, and those conflicting accounts raised serious concerns about Mook's trustworthiness and integrity—thus leading to his termination. Overall, there is no genuine dispute as to this fact.



- 4 -

44. The portion of the transcript to which Mook cites does not refute the fact that the motivation behind Mook's termination was the doubts about his honesty and integrity. Indeed, Hall testified under oath that:

```
16          So I felt like Dan had exhibited poor
17     judgment by filling it out and I felt like he was not
18     being completely forthright with me and I felt like
19     he had lied to gain that signature.  And he's a
20     prosecutor, he's law enforcement, and if I have an
21     issue -- I have any question regarding an assistant
22     Commonwealth attorney's judgment or honesty and
23     integrity, I have to let them go.  So that's why I
24     did it.
```

Hall Depo., 31:16–24.

So, while Mook may be correct that the Human Resources Department of the City of Martinsville also sought Mook's termination and made that known to Hall, Mook fails to refute the fact that Hall's motivation was related solely to his doubts about Mook's honesty, integrity, and judgment. Thus, there is no genuine dispute as to this fact.

<u>**ARGUMENT & AUTHORITY**</u>

I. <u>**Hall is Entitled to Summary Judgment.**</u>

    a. **Hall is not an employer within the meaning of the FMLA**.

The Court must determine if Hall was an "employer" as that term is defined under the applicable section of the United States Code because the FMLA does not apply to every employer in the United States. If Hall does not qualify as an "employer" within the meaning of the FMLA, then Mook's claim against him fails as a matter of law.



- 5 -

629.0500\ALO
4933-0204-0642 .v3

Mook's argument that Hall is an "employer" within the meaning of the FMLA rests primarily on a private letter ruling from the U.S. Department of Labor, which provides that "public agency" includes any "entity" "created by the State" or "administered by individuals who are responsible to public officials or the general electorate." U.S. Department of Labor, Letter Ruling FMLA-104 (May 2, 1999).

However, that language is found nowhere in the relevant statutes, and "agency interpretations of statutes . . . are not entitled to deference." Loper Bright Enterprises, et al. v. Raimondo, 603 U.S. 369, 392 (2024). Instead, "it remains the responsibility of the court to decide whether the law means what the agency says." Id. And here, neither 29 U.S.C.§ 203(x) nor 29 U.S.C. § 2611(4)(A)(iii) contains any language like that created by the Department of Labor in its private letter ruling.

The Court should not go so far as to read that language into the relevant statutes either. See O'Hara v. NIKA Techs., Inc., 878 F.3d 470, 475 (4th Cir. 2017) ("Courts are not free to read into the language [of a statute] what is not there, but rather should apply the statute as written.") (modifications in original) (quoting United States v. Murphy, 35 F.3d 143, 145 (4th Cir. 1994)).

Under the FMLA, "employer" includes any "'public agency', as defined in section 203(x) of this title." 29 U.S.C. § 2611(4)(A)(iii). "Public agency" means "the Government of the United States; the Government of a State or political subdivision thereof; any agency of the United States . . . a State, or a political subdivision of a State; or any interstate governmental agency." 29 U.S.C. § 203(x).

Here, a "Commonwealth's Attorney derives his or her authority from the Constitution." Connell v. Kersey, 262 Va. 154, 161 (2001) (citing Va. Const. art. VII,



- 6 -

629.0500\ALO
4933-0204-0642 .v3

§ 4). "Their offices and powers exist independent from the local government, and they do not derive their existence or their power from it." Roop v. Whitt, 289 Va. 274, 280 (2015).

As an elected official, the Commonwealth's Attorney's "duty of loyalty and performance" is "to the people who elect him in a particular jurisdiction rather than the Commonwealth of Virginia as a whole." City of Va. Beach v. Commonwealth, 19 Va. Cir. 283, 284–85 (1990) (citing Franklin v. Town of Richlands, 161 Va. 156, 170 S.E. 718 (1933)).

Thus, the Commonwealth's Attorney "is independent of municipal or county and state governments. It follows then, that these entities can exert no control over the actions of persons elected to and occupying positions as constitutional officers." Id. (citing Sherman v. City of Richmond, 543 F. Supp. 447 (E.D. Va. 1982)).

Accordingly, Hall is neither a political subdivision of the Commonwealth nor an interstate governmental agency of the Commonwealth and therefore does not fit the definition of a "public agency" for purposes of the FMLA. Because Hall is not a "public agency" under the FMLA, he is not an "employer" under the FMLA either.

To the extent Mook refers to Weth v. O'Leary, 796 F.Supp.2d 766 (E.D. Va. 2011), that case is readily distinguishable from this case. In that case, the defendant did not argue that she was not an "employer" within the meaning of the FMLA; instead, the defendant advocated for the broader proposition that she, as a Virginia County Treasurer, was entitled to sovereign immunity for claims against her in her individual capacity. See Weth, 796 F. Supp. 2d at 774–775. And the Weth Court's



- 7 -

decision centered around the question of whether public officials being sued in their individual capacity were entitled to sovereign immunity. Id.

Here, Hall is not claiming that Mook's claim against him in his individual capacity is barred by the doctrine of sovereign immunity. Furthermore, unlike the defendant in Weth, Hall is not a County Treasurer but is instead a Commonwealth's Attorney. As Hall argued above and in his opening brief, the nature of a Commonwealth's Attorney's office is such that it does not qualify as a "public agency" within the meaning of the FMLA. Likewise, Hall, as a Commonwealth's Attorney, does not qualify as a "public agency" within the meaning of the FMLA, and thus he is not an "employer" within the meaning of the FMLA.

Therefore, because Hall is not an "employer", he is not subject to the FMLA, and Mook's FMLA claim against him fails.

**b. Hall's Actions Did Not Constitute FMLA Interference.**

Mook attempts to reframe the concern that Hall had with the November 12 FMLA Certification as though that Certification was "incomplete or insufficient." However, as the evidence clearly shows, the November 12 Certification was neither incomplete nor insufficient.

"A certification is considered *insufficient* if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive." 29 C.F.R. § 825.305(c) (emphasis added). "A certification is considered *incomplete* if the employer receives a certification, but one or more of the applicable entries have not been completed." Id. If a certification is either "incomplete" or "insufficient",



- 8 -

then the employer must notify the employee and provide seven calendar days for the employee to cure the deficiency. Id.

The November 12 Certification was neither "incomplete" nor "insufficient." Instead, the information provided was clear and responsive, and there were no applicable entries that were not completed. The sole concern with the November 12 Certification was whether it was "authentic."

"[A]uthentication means providing the health care provider with a copy of the certification and requesting verification *that the information contained on the certification form was completed and/or authorized by the health care provider* who signed the document; no additional medical information may be requested." 29 C.F.R. § 825.307(a) (emphasis added).

Mook argues that because "the concern was . . . whether someone in Dr. Francis' office had 'filled out'" the November 12 Certification, the issue falls under the category of "incomplete" or "insufficient." By the plain language of 29 C.F.R. §§ 825.305(c) and 825.307(a), Mook is incorrect.

As defined above, "insufficient" means that a submitted FMLA certification is complete "but the information provided is vague, ambiguous, or non-responsive," whereas "incomplete" means "one or more of the applicable entries have not been completed." 29 C.F.R. § 825.305(c).

There is no dispute (1) that the November 12 FMLA Certification was filled out in its entirety, and so was *not* "incomplete," and (2) that the Certification did not contain information that was "vague, ambiguous, or non-responsive." Thus, Mook is incorrect that the question of who filled out the November 12 FMLA Certification



- 9 -

629.0500\ALO
4933-0204-0642 .v3

goes to either the completeness or sufficiency of the Certification. Instead, it is, as Hall argued in his opening brief, an issue of authenticity.

But rather than refute Hall's argument that providing a curing period before authenticating the November 12 FMLA Certification was not <u>practicable</u> under the circumstances—which precluded the necessity of the seven-day curing period—Mook argues that a waiver of the seven-day curing period is "not faithful to the express terms of the FMLA and its regulations." ECF No. 59 at 12.

Yet the waiver of the seven-day curing period is contained <u>directly within the regulations</u>, 29 C.F.R. § 825.305(c), which shows that the FMLA and its regulations do not grant employees *carte blanche* to submit FMLA Certifications with the guarantee that they will always be entitled to the seven-day curing period no matter what flaws such Certifications might contain.

Instead, the fact that the regulations contain a waiver of the seven-day curing period establishes that there are situations in which employees will not be provided the seven-day curing period to correct a flaw in an FMLA Certification. <u>See</u> <u>Corley v. United States</u>, 556 U.S. 303, 314 (2009) ("The Government's reading is at odds with one of the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . .'") (quoting <u>Hibbs v. Winn</u>, 542 U.S. 88, 101 (2004)). As the regulations provide, the seven-day curing period is not required where its provision is "not practicable under the particular circumstances." 29 C.F.R. § 825.305(c).



- 10 -

And here, as Hall argues in his opening brief, ECF No. 52-1, the seven-day curing period was not practicable under the circumstances because Mook admitted that he filled out the November 12 Certification Form himself:

[Hall]: . . . And again, I cannot wrap my head around why, why you would go ahead and fill this out. So you're—

[Mook]: I was being a scrivener for them.

. . .

[Hall]: Dan, you keep saying relevant portions. Again, it looks like you filled out all of Section III. And again, he's not, he's not saying that he took it and he reviewed it.

[Mook]: Well—Andy, the fact that he didn't review it, that's not my problem. Andy, he's the one that put his signature on the document.

ECF No. 58-3 at 10.

Thus, there is no dispute that Mook filled out the FMLA Certification when he was not the person who was supposed to do so. Thus, the authenticity defects of November 12 FMLA Certification could not be cured—instead, Mook's only recourse would have been to obtain an entirely *new* FMLA Certification, which Mook did after his termination. Mook Depo., 32:1–14. As a result, providing a curing period for the November 12 Certification was not practicable under the circumstances, and so Hall was excused from that requirement.

1. **Mook's fraudulent act was the misrepresentation of who filled out the November 12 FMLA Certification.**

Mook attempts to refute the claim that he did not engage in fraudulent behavior by arguing that if he intended to engage in fraud, then he would have simply forged Dr. Francis' name. Mook goes on to make additional arguments that



- 11 -

Hall knew or should have known that Mook did not forge a signature on the November 12 FMLA Certification.

However, those arguments are tangential and do not address the true issue that the November 12 FMLA Certification presented at the time Hall received it. Namely, that Mook filled out a section of the FMLA Certification reserved for his mother's medical provider, possibly obtained a signature on the FMLA Certification in a manner that was deceitful, and then provided that Certification to his employer without disclosing that his mother's health care provider had not filled out Section III.

As detailed above, there is no genuine dispute that Dr. Francis did not authorize the November 12 FMLA Certification. Although Mook attempts to claim that the notation "per Dr. Francis" establishes that she *did* authorize the Certification, the testimony from both Dr. Francis and RN Schmidt—two disinterested witnesses in this matter—is that Dr. Francis *did not* authorize the November 12 FMLA Certification. Regardless, however, the issue before the Court is not whether Mook forged anyone's signature or even whether Dr. Francis authorized the November 12 FMLA Certification.

Instead, the issue before the Court is whether *the existence of that controversy* and the serious doubts it raised about Mook's honesty, integrity, and judgment provided legitimate grounds for Mook's termination without running afoul of the FMLA.

"The FMLA provides no relief *unless the employee has been prejudiced* by the violation." Adkins v. CSX Transp., Inc., 70 F.4th 785, 796 (4th Cir. 2023) (emphasis



- 12 -

added). For example, "[t]he FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." <u>Vannoy v. Fed. Reserve Bank of Richmond</u>, 827 F.3d 296, 304–05 (4th Cir. 2016); <u>Adkins</u>, 70 F.4th at 797.

"In order to maintain the integrity of the FMLA, employers must be able to investigate and address plausible allegations that employees have been dishonest in their medical leave claims." <u>Id.</u> And if "an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff," it is not the role of the Court "to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." <u>Laing v. Fed. Express Corp.</u>, 703 F.3d 713, 722 (4th Cir. 2013).

Moreover, "an employer does not interfere with the exercise of FMLA rights where it terminates an employee's employment based on the employer's honest belief that the employee is not taking FMLA for an approved purpose." <u>Mercer v. Arc of Prince Georges Cty., Inc.</u>, 532 F. App'x 392, 396 (4th Cir. 2013).

Notably, Mook fails to refute or even to address Hall's argument that Hall had a genuine belief that Mook engaged in dishonest behavior and exhibited poor judgment in connection with the November 12 FMLA Certification, and that genuine belief was the sole reason behind Mook's termination without regard to the fact that the underlying matter concerned FMLA leave.

Overall, no reasonable juror could conclude that Hall interfered with Mook's FMLA rights, and the Court should grant Hall's Motion for Summary Judgment and dismiss the claim against him with prejudice.



- 13 -

629.0500\ALO
4933-0204-0642 .v3

**c. Mook is not protected under the FMLA because of his fraudulent behavior and his abuse of FMLA rights.**

"[A]n employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's . . . provisions." Sharif v. United Airlines, Inc., 841 F.3d 199, 206 (4th Cir. 2016).

The evidence establishes that Mook sought FMLA leave when he was not entitled to it because the qualifying "serious health condition" did not and would not exist for the time period he sought FMLA leave.

Mook has entirely failed to address Hall's argument that Mook's FMLA leave would have expired *prior* to his mother's surgery—a fact that raises legitimate concerns about whether Mook was abusing or attempting to abuse his FMLA rights at the time of his termination.

As a result, he is not now entitled to the protections of the FMLA. Therefore, the Court should grant Hall's Motion for Summary Judgment.

**d. Hall is entitled to qualified immunity because the FMLA right to the seven-day curing period was not "clearly established" under the particular circumstances of this case.**

When a defendant asserts a qualified immunity defense, the court must conduct a two-pronged analysis which addresses (1) whether the defendant violated the plaintiff's rights; and (2) if so, whether at the time of the alleged violation the right was clearly established. See Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013). The Court may address either prong first in its qualified immunity analysis. Hensley v. Price, 876 F.3d 573, 580 (4th Cir. 2014).



- 14 -

629.0500\ALO
4933-0204-0642 .v3

It is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam) (quoting Ashcroft, 563 U.S. at 742). This is where Mook's qualified immunity analysis falls apart.

Mook argues that Hall is foreclosed from claiming qualified immunity pursuant to the Eastern District of Virginia's decision in Smith v. School Board for the City of Norfolk, Case No. 2:21-cv-138, ECF No. 26 (E.D. Va. Nov. 5, 2021). However, not only was that decision rendered at a different procedural posture (*i.e.*, at the motion to dismiss stage) than the case presently before the Court, but the Court in Smith was addressing a different question entirely. Additionally, whether a right is clearly established hinges on "the 'decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" Owens v. Lott, 372 F.3d 267, 279–80 (4th Cir. 2004) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999)). To that end, this Court ought not consider Smith for the purpose of determining whether the right in this case (*i.e.*, the right to the seven-day curing period) was "clearly established" at the time of Mook's termination.

Nevertheless, as indicated above, the Smith Court was faced with the question of whether *personal liability of public employees* was "clearly established" at the time of the conduct alleged in that case. There, the Smith Court conducted a higher level analysis of a wider, more general issue than is presented in this case. Smith, ECF No. 26 at 16. In other words, the question of whether Mook's right to



the seven-day curing period in this case is far more narrow and focused than the issues that the Smith Court faced.

Additionally, the Smith Court expressly acknowledged that numerous other courts within the Fourth Circuit *have* found that public employees can be entitled to qualified immunity when the facts of their respective cases call for such immunity. Id. at 18. Lastly, the Smith Court noted that the defendants in that case had "confuse[d] the 'clearly established' prong by raising the issue of personal liability instead of whether the right alleged to be violated was clearly established." Id. at 19. Overall, then, the Court should find that this case is readily distinguishable from Smith, and Smith's qualified immunity analysis has little bearing here.

Next, Mook argues that "the regulations make clear that the policy underlying the seven-day curing period is to protect the employee's privacy rights and safeguard sensitive information medical information [sic]." ECF No. 59 at 18. Yet, underlying policy is not established law and does not have the force of law. See Tabb Lakes, Ltd. v. United States, 715 F. Supp. 726, 729 (E.D. Va. 1988) ("[A] general statement of policy . . . does not establish a binding norm. It is not finally determinative of the uses or rights to which it is addressed.").



Even so, Mook's argument invites the Court to engage in qualified immunity analysis at a "high level of generality," which the Supreme Court of the United States has expressly proscribed. White, 580 U.S. at 79. And even assuming that Mook is correct, there is nothing to indicate that such underlying policy is relevant to this action, as the pertinent FMLA Certification has no sensitive medical

- 16 -

629.0500\ALO
4933-0204-0642 .v3

information relating to Mook himself and does not concern Mook's own privacy rights. Furthermore, Mook has never alleged that Hall or his office ever inquired about or discussed Shirley Mook's private health information; instead, the only allegations in this case have been that Shirley Mook's health care providers were contacted for the purpose of determining whether it was Mook or the health care providers who completed the November 12 FMLA Certification.

Mook's argument is further belied by the fact that the regulations contain an express waiver of the seven-day curing period when it is not "practicable" under the circumstances. 29 C.F.R. § 825.305(c). As argued above, providing the seven-day curing period was not practicable under the circumstances—thus, the right to the curing period was not "clearly established" when Mook submitted an FMLA Certification did not appear to be authentic.

Lastly, the Court should refrain from entertaining any *post hoc* arguments made by Plaintiff. Of course, in hindsight, Hall understands that the situation could have been handled differently; however, the information Hall possessed at the time of Mook's termination was that (1) Mook filled out a section of the FMLA Certification that he was not supposed to; (2) Mook might have engaged in deceitful behavior in order to obtain a signature on the FMLA Certification; and (3) the FMLA Certification was not authorized by Dr. Francis, Shirley Mook's health care provider. Based on the information Hall possessed at the time, and the doubts that information created about Mook's trustworthiness, integrity, and judgment, Hall could not allow Mook to continue serving as an Assistant Commonwealth's Attorney.



- 17 -

629.0500\ALO
4933-0204-0642 .v3

Therefore, the Court should find that Hall is entitled to qualified immunity for Mook's claim against him, grant Hall's Motion for Summary Judgment, and dismiss this matter against him with prejudice.

## CONCLUSION

For the foregoing reasons, defendant G. Andrew Hall, by counsel, respectfully requests entry of an Order granting his Motion for Summary Judgment and granting such further relief as the Court deems just and proper.

Respectfully Submitted,

G. ANDREW HALL

/s/   Austin L. Obenshain
Nathan H. Schnetzler (VSB No. 86437)
Austin L. Obenshain (VSB No. 99494)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: nschnetzler@faplawfirm.com
       aobenshain@faplawfirm.com
*Counsel for G. Andrew Hall*



629.0500\ALO
4933-0204-0642 .v3

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

/s/ Austin L. Obenshain  
Of Counsel

629.0500\ALO  
4933-0204-0642 .v3